UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES HAGGARD,

    Plaintiff,

v.                                                               CAUSE NO. 3:19-cv-159 DRL-MGG

JAMES JACKSON, M.D.,

    Defendant.

OPINION & ORDER

Pending before the court are two motions. Dr. James Jackson filed a summary judgment motion claiming that James Haggard failed to exhaust his administrative remedies before filing his 42 U.S.C. § 1983 claim. Mr. Haggard filed a motion for the court to reconsider its screening order (issued June 21, 2019) specific to his medical malpractice claim. For the following reasons, the court grants Dr. Jackson's summary judgment motion on the issue of exhaustion, clarifies that the dismissal of Mr. Haggard's medical malpractice claim was without prejudice, and thus denies his motion for reconsideration as moot. The court declines to exercise supplemental jurisdiction over the medical malpractice claim, so dismisses this case without prejudice.

BACKGROUND

In July 2016, Mr. Haggard was diagnosed with a severe bone infection (osteomyelitis) while incarcerated at the Plainfield Correctional Facility. Mr. Haggard's bone infection spread in his body, and he needed emergency surgery to prevent the infection from continuing to spread. Despite his treatment, the infection damaged his right wrist. He had an appointment to have pins and plates inserted to repair his wrist in March 2018.

On February 20, 2018, Mr. Haggard filed an informal grievance with the Plainfield Correctional Facility in which he complained that he was attacked while in protective custody. ECF

25-3 at 10. Unsatisfied with the prison's response of separating him from his assailants, Mr. Haggard filed a formal grievance with the facility on February 26, 2018. *Id.* at 9. In his formal grievance, Mr. Haggard gave more details related to his attack and indicated that his attackers stomped on his weakened right wrist. *Id.* In the formal grievance, Mr. Haggard complained that he felt as if he was being punished because he was placed in a cell where he could not watch television or order food. *Id.* Whatever the response from the Plainfield Correctional Facility, Mr. Haggard was unsatisfied as he appealed the decision on March 1, 2018. *Id.* at 11. As a result of Mr. Haggard's grievances, and ostensibly at his request, he was transferred to Westville Correctional Facility. *Id.*

In July 2018, Mr. Haggard filled out a "sick call slip" to see the facility physician at Westville. ECF 1 at 2. According to Mr. Haggard's complaint, Dr. Jackson told him that there was no need to have the follow-up appointment with the orthopedic surgeon because "Dr. Jackson stated . . . that there was nothing wrong with [Mr. Haggard's] wrist" and that Mr. Haggard would be fine. *Id.* Mr. Haggard, in his complaint, alleges that Dr. Jackson violated his rights by failing to order a follow-up appointment with the orthopedic specialist. *Id.* at 3.

On March 5, 2019, Mr. Haggard filed a *pro se* complaint against Dr. Jackson and Wexford Nursing. *See id.* The court's screening order on June 21, 2019 dismissed Wexford Nursing because Mr. Haggard had not shown that the company would be liable under the Indiana Medical Malpractice Act and because there is no *respondeat superior* liability under 42 U.S.C. § 1983. *See* ECF 10. Dr. Jackson then filed a summary judgment motion on the issue of exhaustion. Mr. Haggard, now represented by counsel, filed a response to Dr. Jackson's motion that contained a motion to reconsider the court's screening order. Dr. Jackson timely filed a reply.

STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

2

of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

In support of summary judgment, a party may raise an affirmative defense. An affirmative defense "limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case." *Tober v. Graco Children's Prods., Inc.*, 431 F.3d 572, 579 n.9 (7th Cir. 2005). "In other words, an affirmative defense is '[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true.'" *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016) (quoting *Defense*, *Black's Law Dictionary* (10th ed. 2014)). "Failure to exhaust is an affirmative

3

defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). "Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard." *Williams v. Baldwin*, 239 F. Supp. 3d 1084, 1089 (N.D. Ill. 2017) (quotation omitted).

## DISCUSSION

A. *Dr. Jackson Is Entitled to Summary Judgment on the § 1983 Claim Because Mr. Haggard Has Not Exhausted His Administrative Remedies under the Prison Litigation Reform Act.*

Mr. Haggard pursues an Eighth Amendment claim through 42 U.S.C. § 1983—initially filed *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (filing by unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"). Section 1983 provides a civil remedy for constitutional violations against a person. The Eighth Amendment prohibits state-sanctioned "cruel and unusual punishments," *see* U.S. Const. amend. VIII, and requires prisons to provide its inmates with constitutionally adequate medical care, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must show that (1) his medical need was objectively serious, and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Notwithstanding a prisoner's showing of liability under Section 1983, prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court. *See* 42 U.S.C. § 1997e(a) (Prison Litigation Reform Act). A "suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *McCarty*, 781 F.3d at 893. This circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A "prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

4

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. The failure to exhaust administrative remedies mandates dismissal of a plaintiff's claim without prejudice. *See Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000).

Here, Dr. Jackson has met his burden in his affirmative defense showing that Mr. Haggard never exhausted the administrative remedy process. Mr. Haggard hasn't argued at summary judgment that he was hindered from using the administrative process, so Mr. Haggard's § 1983 claim must be dismissed without prejudice. At the Westville facility, the grievance procedures are noted in the inmate handbook and provided to inmates upon their arrival. ECF 25-2 ¶ 6. Mr. Haggard, as an inmate at the facility, had access to this handbook and the ability to utilize these procedures. *Id.* The grievance process at Westville has four steps: first, the inmate must file an informal grievance; second, the inmate must file a formal grievance; third, the inmate must appeal the grievance specialist's decision to the warden; and fourth, the inmate must appeal the warden's decision. *Id.* ¶¶ 7(a-d).

There are no indications—and Mr. Haggard does not dispute—that Mr. Haggard ever attempted to follow this grievance process with respect to the medical claims against Dr. Jackson. *Id.* ¶ 16 ("Based upon my review of the available grievance records, Mr. Haggard has not completed the exhaustion process with regard to any grievance related to medical care [or] Dr. James Jackson . . . . Mr. Haggard did not even begin the process, despite receiving specific instructions, despite having

5

access to the IDOC grievance policies and procedures, and despite having filed a grievance before on another matter."). Mr. Haggard cannot claim ignorance of the prison's grievance process either; Mr. Haggard had successfully filed one grievance in 2018 while at Westville. *Id.* ¶ 10. For his claims against Dr. Jackson, however, Mr. Haggard did not even begin the process, though he received specific instructions on how to do so and despite having access to the IDOC grievance policies and procedures. *Id.* ¶ 16. Mr. Haggard failed to exhaust his administrative remedies, so his § 1983 claim cannot proceed. *See Massey*, 221 F.3d at 1034. The court's dismissal of Mr. Haggard's § 1983 claim is without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

> B. *The Court Denies Mr. Haggard's Motion to Reconsider Its Prior Screening Order but Clarifies the Dismissal of the Medical Malpractice Claim Was Without Prejudice.*

Mr. Haggard also pursues a medical malpractice claim based on Indiana state law. In the court's screening order (ECF 10), the court dismissed Mr. Haggard's medical malpractice claims against Dr. Jackson and Wexford based on the Indiana Medical Malpractice Act. Mr. Haggard moves to reconsider that part of the screening order dismissing the state law malpractice claim. "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citing *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)).

The court needn't decide whether the motion for reconsideration should be granted because Dr. Jackson concedes that Mr. Haggard should be allowed to proceed on a state law malpractice claim if he files an amended complaint. *See* ECF 47 at 8-9. Accordingly, the court dismisses Mr. Haggard's medical malpractice claim without prejudice, and reconsideration of the screening order is a moot issue. *See On-Site Screening, Inc. v. United States*, 687 F.3d 896, 900 (7th Cir. 2012) ("[F]ederal courts do not give advisory opinions on claims not before them.").

6

The court originally had supplemental jurisdiction over this state law claim because it arose from the "same case or controversy" as the § 1983 claim. *See* 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(c)(3) "allows a district court to decline to exercise supplemental jurisdiction over a state-law claim where the court has dismissed all the claims within its original jurisdiction." *Isabella A. v. Arrowhead Union High Sch. Dist.*, 323 F. Supp. 3d 1052, 1064 (E.D. Wis. 2018) (citing 28 U.S.C. § 1367(c)(3)). Indeed, the presumption in such circumstances "is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). That is the case here. In deciding whether to retain federal jurisdiction, this court may consider whether the case is in its "gestational stage," the areas of state law that are implicated in the plaintiff's claim, and the need to "promote judicial economy, fairness, and comity with state courts." *Isabella A.*, 323 F. Supp. 3d at 1064-65 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351-52 (1988) and *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 548 F.3d 505, 514-15 (7th Cir. 2009)).

Mr. Haggard's medical malpractice claim was properly within this court's supplemental jurisdiction because it arose out of the same case and controversy as his § 1983 claim. Now that the court has dismissed his § 1983 claim, it has lost its basis for original jurisdiction. Dismissal to facilitate a state court filing is appropriate here. *See Al's Serv. Ctr.*, 599 F.3d at 727. Applying the factors the court considers in retaining jurisdiction, the case has been pending for over one year, so the case may not be in the "gestational stage" of the case, but this particular claim, which never had the opportunity to develop, remains gestational. The remaining medical malpractice claim implicates fundamental Indiana state law issues, which this court is hesitant to rule on when Indiana courts are adequately prepared to handle the case. The court is also wary of issuing a judgment on a state legal issue that might conflict with Indiana's ability to apply and develop its own medical malpractice law. The interests of judicial economy, fairness, and comity with state courts weigh heavily in favor of dismissal

or remand of this action. This court sees no reason to retain jurisdiction over this case; under 28 U.S.C. § 1367, the court declines to retain jurisdiction.

Remand is not appropriate in a case that was originally filed in federal court. *See Carnegie-Mellon Univ.*, 484 U.S. at 351 ("because the plaintiff in *Gibbs* filed his suit in federal court, remand was not an option in the case"). Mr. Haggard may proceed to prosecute his state law medical malpractice claims by refiling in state court. *See Al's Serv. Ctr.*, 599 F.3d at 727.

C. *The Court Declines to Consider Mr. Haggard's Request for Rule 11 Sanctions Because He Did Not Follow the Proper Procedures in Filing It.*

Mr. Haggard requested Rule 11 sanctions against Dr. Jackson, saying Dr. Jackson improperly failed to correct the court regarding its alleged error in applying the Indiana Medical Malpractice Act in the screening order (ECF 10). The court declines to consider the request for these sanctions, however, because no separate motion for sanctions was filed. *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion."). Moreover, even if Mr. Haggard had properly filed a motion for Rule 11 sanctions, Mr. Haggard has not shown that Dr. Jackson violated any obligations to the court. The court's previous screening order instructed Dr. Jackson to respond "only to the claim for which the plaintiff has been granted leave to proceed in this screening order." ECF. 10 at 5. Dr. Jackson complied with the court's screening order. The court does not find that Dr. Jackson filed any false documents, presented any false argument, or made any misrepresentations to the court. The court finds that Mr. Haggard's request for Rule 11 sanctions fails both procedurally and substantively.

CONCLUSION

Accordingly, the court GRANTS summary judgment in favor of Dr. Jackson dismissing without prejudice Mr. Haggard's § 1983 claim (ECF 24); CLARIFIES that the dismissal of the medical malpractice claim (ECF 10) was without prejudice; DENIES the motion for reconsideration as moot (ECF 43); and DECLINES to exercise supplemental jurisdiction over the medical malpractice claim,

leaving Mr. Haggard to pursue that claim, if he wishes, in state court. The clerk is directed to enter judgment accordingly.

SO ORDERED.

March 31, 2020  *s/ Damon R. Leichty*
Judge, United States District Court